## UNITED STATES v. DIECKERHOFF.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 228.  Argued April 17, 1906.—Decided May 14, 1906.

A bond given by an importer to a collector of customs and purporting to be executed under cover of § 2899, Rev. Stat., conditioned in double the value of packages delivered to the importer by the collector and to be forfeited if such packages are opened without consent of the collector and in presence of an inspector, or if not returned to collector on his demand therefor, is a valid bond, for, although not conditioned in express words of the statute, it does not run counter thereto and it is within the authority of the collector to accept it.

Under such a bond the obligation is fixed and the Government is not required to prove any actual loss or damage but is entitled to recover the full amount specified in the bond—double the value of the package ordered to be returned—as a definite sum, to be paid by the importer for nonfulfillment of his statutory duty; and this obligation is not affected by anything contained in § 961, Rev. Stat., limiting recoveries on forfeitures to amount due in equity.

Where Congress has provided a specific penalty for failing to comply with a statutory provision and obligation, it is not within the province of courts of equity to mitigate the harshness of the penalty or forfeiture or to grant relief running directly counter to the statutory requirements.

THE facts are stated in the opinion.

*Mr. J. C. McReynolds*, Assistant Attorney General, for the United States:

The purpose of Congress, clearly expressed in section 2899, Revised Statutes, is that all imports shall be held pending examination, except when the collector, upon the owner's request, may decide that sample packages can be relied on to reveal the nature of all. To expedite deliveries and favor importers the statute permits them—the collector assenting—to withdraw their merchandise, except the samples, provided bond be given to return the same within ten days if called for. The manifest purpose is to subject all the imports to inspection whenever the Government officers conclude that course is proper.

The redelivery bond taken upon request of the importer is purely voluntary. Much more is involved than mere pecuniary loss to the Government. The articles may be contraband; they may be necessary evidence to punish perjury; they always furnish the best means of ascertaining values, false descriptions, etc.

Section 2899, Revised Statutes, permits demand for a separate, complete bond for each importation; but this would entail much inconvenience upon large importers, and the Secretary of the Treasury, by regulation dating back to 1857, Customs Regulations, article 391, allows a general bond upon which the value of any consignment may be indorsed. In the present case all parties voluntarily assented to the arrangement and the matter stands as if a single bond of like tenor for twice the value of the merchandise had been executed.

The recovery is not limited to the money loss sustained by the Government. *Clark* v. *Barnard*, 108 U. S. 436; *Smythe* v. *United States*, 188 U. S. 156; *Nilson* v. *Jonesboro*, 57 Arkansas, 168, 177; *State* v. *Hall*, 70 Mississippi, 678, 682; *United States* v. *Montell*, Taney's Cir. Ct. Dec. 47; *United States* v. *Hatch*, 1 Paine, 336; *United States* v. *Pingree*, 1 Sprague, 339; Andrews' Revenue Laws, 102.

The Government pursued the proper course by asking judg-

ment for twice the value of the package called for.　But if the bond as executed had strictly followed the language of section 2899, under the authority of *Clark* v. *Barnard* the Government would have been entitled to demand a judgment for twice the estimated value of the goods in the invoice which contained the unreturned package.　Secs. 2901, 2939, Rev. Stat.　Courts of equity will not interfere in cases of forfeiture for the breach of covenants and conditions when there cannot be any just compensation.　Story, Eq. Jur. §§ 1324, 1326; Pomeroy, Eq. Jur. § 381.

The clause authorizing discharge of the bond upon payment of double the estimated value of any unreturned package is not specifically provided for by section 2899, Revised Statutes; but it is not prohibited and, being less onerous than what might have been demanded, one who voluntarily assented thereto may not complain on that account.　*Moses* v. *United States*, 166 U. S. 571, 586.　The Secretary of the Treasury or his agent, the collector, has authority to take common-law bonds and to stipulate for liquidated damages therein.　*United States* v. *Tingey*, 5 Pet. 115; *United States* v. *Bradley*, 10 Pet. 343; *United States* v. *Hodson*, 10 Wall. 395; *Jessup* v. *United States*, 106 U. S. 147; *Constable* v. *National Steamship Co.*, 154 U. S. 79; *The S. Oteri*, 67 Fed. Rep. 146; *Stephenson* v. *Monmouth Min. & Mfg. Co.*, 84 Fed. Rep. 115; *Grady* v. *United States*, 98 Fed. Rep. 240.

If the clause permitting payment of twice the value of an unreturned article is invalid the defect is cured by those provisions in the bond which follow the language of the statute. The conditions being severable, the authorized one is good. *United States* v. *Mora*, 97 U. S. 413.

*Mr. W. Wickham Smith*, with whom *Mr. John K. Maxwell* was on the brief, for respondents:

No damage having been sustained by the Government there can be no recovery under § 961, Rev. Stat.　*United States* v. *Duys*, 112 Fed. Rep. 875.

A sum of money in gross, to be paid for the non-performance of an agreement, is considered as a penalty, the legal operation of which is to cover the damages which the party, in whose favor the stipulation is made, may have sustained from the breach of contract by the opposite party. It will not, of course, be considered as liquidated damages; and it will be incumbent on the party who claims them as such to show that they were so considered by the contracting party. *Taylor* v. *Sandiford,* 7 Wheat. 11; *Van Buren* v. *Digges,* 11 How. 461. See also *Watts* v. *Connors,* 115 U. S. 353; *Bignall* v. *Gould,* 119 U. S. 495; *Chicago House Wrecking Co.* v. *United States,* 106 Fed. Rep. 385; *Manufacturing Co.* v. *Camp,* 65 Fed. Rep. 794.

Under the customs administrative act a very similar bond was considered in *United States* v. *Cutajar,* 59 Fed. Rep. 1000; *S. C.,* 67 Fed. Rep. 530, where it was held that, the statute not having fixed the bond, the Secretary of the Treasury was not authorized to impose the limit of bond but only the amount proved to be due under it.

MR. JUSTICE DAY delivered the opinion of the court.

An action was brought in the Circuit Court to recover upon a certain redelivery bond purporting to be executed under cover of section 2899, Rev. Stat. The respondents, prnicipals on the bond, were partners, as Dieckerhoff, Raffloer & Co. Achelis and Boker executed the bond as sureties. On January 13, 1897, Dieckerhoff, Raffloer & Co. imported by the steamship Bovic certain merchandise which was entered in the New York custom house and consisted of seven packages. These were described in two invoices and are numbered 417 to 421, 983, 984. Package No. 418 was designated by the collector to be sent to the public stores for examination and appraisal; the others were turned over to the importer under section 2899, Rev. Stat. The estimated value of the entire importation, $1,522, was indorsed on the bond. Within ten days after the examination and appraisal of package No. 418 the collector ordered respondents to return package No. 420. This package

was not returned. Thereupon suit was instituted upon the bond. A demurrer to the complaint was overruled, and an answer was filed denying breach of the bond and also that the United States had sustained any actual damages. At the trial a customs clerk testified as to the value of package No. 420, estimated from the invoice, that it was $184.56; that the indorsement on the bond was: "Vessel, Bovic; where from, Liverpool; amount, $1,522." It was conceded that the collector had called for the return of the package, that the same was not returned and respondents offered no evidence. Counsel for the United States conceded that there was no proof in the case that the United States had suffered actual damage, and that they could make no such proof. Over the respondents' request for a verdict in their favor the Circuit Court directed a verdict in favor of the Government for $369.12, being twice the estimated value of the unreturned package. The Circuit Court of Appeals reversed this judgment.

The sections of the Revised Statutes pertinent to be considered are:

"SEC. 2899. No merchandise liable to be inspected or appraised shall be delivered from the custody of the officers of the customs, until the same has been inspected or appraised, or until the packages sent to be inspected or appraised shall be found correctly and fairly invoiced and put up, and so reported to the collector. The collector may, however, at the request of the owner, importer, consignee, or agent, take bonds, with approved security, in double the estimated value of such merchandise, conditioned that it shall be delivered to the order of the collector, at any time within ten days after the package sent to the public stores has been appraised and reported to the collector. If in the meantime any package shall be opened, without the consent of the collector or surveyor given in writing, and then in the presence of one of the inspectors of the customs, or if the package is not delivered to the order of the collector, according to the condition of the bond, the bond shall, in either case, be forfeited."

"Sec. 2901. The collector shall designate on the invoice at least one package of every invoice, and one package at least of every ten packages of merchandise, and a greater number should he or either of the appraisers deem it necessary, imported into such port, to be opened, examined, and appraised, and shall order the package so designated to the public stores for examination; and if any package be found by the appraisers to contain any article not specified in the invoice, and they or a majority of them shall be of opinion that such article was omitted in the invoice with fraudulent intent on the part of the shipper, owner, or agent, the contents of the entire package in which the article may be, shall be liable to seizure and forfeiture on conviction thereof before any court of competent jurisdiction; but if the appraisers shall be of opinion that no such fraudulent intent existed, then the value of such article shall be added to the entry, and the duties thereon paid, accordingly, and the same shall be delivered to the importer, agent, or consignee. Such forfeiture may, however, be remitted by the Secretary of the Treasury on the production of evidence satisfactory to him that no fraud was intended."

"Sec. 2939. The collector of the port of New York shall not, under any circumstances, direct to be sent for examination and appraisement less than one package of every invoice, and one package at least out of every ten packages of merchandise, and a greater number should he, or the appraiser, or any assistant appraiser, deem it necessary. When the Secretary of the Treasury, however, from the character and description of the merchandise, may be of the opinion that the examination of a less proportion of packages will amply protect the revenue, he may, by special regulation, direct a less number of packages to be examined."

The bond was in the sum of fifty thousand dollars, and conditioned as follows:

"The condition of this obligation is such that if each and every package or packages of each and every importation made by the said principals at any time within six months from and

after the date of these presents and delivered from the custody of the officers of the customs in pursuance of section 2899, Revised Statutes of the United States, shall, within ten days after the package or packages designated by the collector and sent to the public store to be opened and examined, have been appraised and reported to him, be returned to the order of the collector without having been opened except with the consent of the collector or surveyor, given in writing, and then in the presence or one of the officers of the customs; or if the above-bounden obligors shall, in lieu of such return, pay to the proper collecting officer of said port double the estimated value of the package or packages of merchandise not so returned, then this obligation is to be void, otherwise to remain in full force and virtue.

"And the above-bounden obligors do, for themselves, their heirs, executors, administrators, and assigns, jointly and severally covenant and agree with the United States that the collector of customs aforesaid shall indorse on this bond the estimated value of each importation as made, and the date thereof, and that the penalty of this bond shall be held to be double the value of each importation as made and indorsed as aforesaid; and that the value of the importation, where there is no violation of the conditions of this bond, shall not in any way affect the liability in those cases where there shall be a violation thereof."

Upon the facts stated the question is, How much, if anything, can the Government recover upon this bond? That there is difficulty in the solution of the question is found in the different suggestions put forward; that the actual damages sustained by the Government may be recovered, which is the contention of the respondents, and was the view of a majority of the Circuit Court of Appeals; second, the actual value of the unreturned package, which was the view sustained by one judge of the Circuit Court of Appeals; third, twice the value of the package not returned, which was the view of the Circuit Court; fourth, double the value of the consign-

ment, which seems to be the present contention of the Government.

It may be admitted that the bond does not follow in strict terms the provisions of section 2899, which seems to require, or at least to authorize, a bond in double the estimated value of the merchandise imported, with a condition that it shall be delivered to the order of the collector at any time within ten days after the package sent to the public stores has been appraised and reported to the collector. The statute further provides that if in the meantime any package should be opened, without the consent of the collector or surveyor given in writing, and then in the presence of one of the inspectors of the customs, or if the package is not delivered to the order of the collector, according to the condition of the bond; in either case it shall be forfeited. The bond given, while it was for a period of six months, in the sum of $50,000, provided that the collector of customs should indorse on the bond the estimated value of each importation and the date thereof, and that the penalty of the bond should be double the value of each importation as so made and indorsed, which in this case would make the penalty $3,044. This bond contains the condition that if the obligors, in lieu of the return of the package, pay to the proper collecting officer double the value of the package or packages not so returned then the obligation is to be void.

While the statute does not provide in express terms for a bond thus conditioned, it seems to be well settled that, although not strictly in conformity with the statute, if it does not run counter to the statute and is neither *malum prohibitum* nor *malum in se*, it is a valid bond, although not in terms directly required by the statute. *Moses* v. *United States*, 166 U. S. 571, 586. Indeed, the learned counsel for respondents concedes that such a bond can be taken, and in his brief says: "Respondents make no point as to the conformity of the bond to the statute, or the right of the United States or the collector to enforce it in its form as made. For the purposes of this argument we

concede that it was a voluntary bond, enforceable according to
its terms, and that there has been a breach."

But we think this something more than a mere voluntary
bond. The statute authorizes, it is true, a more stringent un-
dertaking, for literally it authorizes a bond in double the value
of the merchandise, conditioned that it shall be delivered to
the order of the collector at any time within ten days after the
package sent to the public stores has been appraised and re-
ported to the collector. And further provides that if, in the
meantime, any package shall be opened, except in the presence
of the collector in the manner provided, or if the package is not
delivered to the order of the collector, according to the condi-
tion of the bond, it shall in either case be forfeited. With this
ample authority to take a more enlarged undertaking we think
it was within the power of the collector to take the bond in
suit, which, taken together, provides for the return of any re-
quired package in an unopened condition or the payment of
double its value as a condition of being discharged from the
full penalty of the bond. There is nothing in this bond which
runs counter to the statute, and it is within the authority con-
ferred to take a bond which should be forfeited if the package
was not returned in the manner required. Certainly the makers
of the bond cannot complain that they have been permitted,
by its terms, to discharge the obligation to return a package
by paying double its value, when a bond in double the value
of the merchandise to be forfeited for the non-return of a pack-
age unopened might have been required.

The real question in the case, then, is what, if anything, can
be recovered under the circumstances shown, on the obligation
incurred in this bond. It is the contention of the respondents
that the United States can recover only for actual damages
which it has shown that it sustained, and that it was not the
purpose of the statute or the obligation of the bond given to
enlarge the liability beyond such damages as the Government
shall be able to allege and prove. But we think the purpose
of the statute and the purpose of the requirement in the bond

provided for therein, and the one given in this case, was to secure the performance of the duty imposed of returning the package or packages, where an importer availed himself of the privilege of withdrawing merchandise from the custody of the governmental officials before it has been examined and appraised. It is the right of the Government to examine merchandise imported from foreign countries and ascertain its value for the purpose of fixing the amount of duties collectible thereon. It has the right to hold this merchandise until this purpose can be effected. Obviously, in a country where the business of importing goods has become so vast, as is now the case in the United States, it would be impracticable to store all goods and hold them until examination. The law has, therefore, provided for the detention usually of one package in ten of an importation, and given the privilege to the importer of removing the rest of the goods, but to be held intact subject to the right of the Government, if an examination of the packages ordered for inspection shall suggest such course, to require that other packages be returned intact for examination, and if this statutory duty is not performed, we think it was the intention of the law to provide specific damages to be recovered upon the non-performance of the duty imposed, and to secure a prompt and faithful discharge of which the statute provides for the giving of a bond.

In carrying out this purpose we hold the law permitted the taking of such a bond as was given in this case, providing that if the party did not return the package required he should pay double the amount of the value thereof. We think such undertaking, for this manner of discharging this duty, or paying the value stipulated, was intended to and does relieve the Government from the necessity of showing any actual damage or loss. It is suggested that the Government may prove the damages sustained possibly by the testimony of informers or of those who packed the merchandise before shipment, and in other ways. But in our opinion it was the purpose of this statute, and the bond executed in the case, to dispense with

the necessity of resort to this method of showing damages and to fix double the value of the package ordered to be returned, as a definite sum to be paid for the nonfulfillment of the statutory duty. In such cases the recovery is for the stipulated sum, and is not limited to the damages actually proven. *Clark* v. *Barnard*, 108 U. S. 436, 457.

It is strongly urged that this in many cases may work serious hardship, and that in-all the years in which this statute or its equivalent has been in force no action is shown to have been brought upon this theory. But the contract is definite in its terms, and it was the privilege of the importer to leave the goods in the custody of the Government or take them out upon giving the obligation which is the subject matter of this suit. It may be that in some cases such a rule would permit the Government to recover a large percentage of the value of the goods imported, and it is suggested the package not returned may represent the larger part of the value of the entire invoice, but we do not think these considerations should overcome the purposes of the statute and the terms of the obligation incurred in the giving of this bond.

The purpose of the statute was to enforce the collection of the revenues, and to require that goods shall be as represented, and if removed· from governmental control before the facts about them are ascertained, to require them to be returned unopened, except as provided by statute, or a specific penalty be paid for failure so to do.

It is further contended that section 961, Rev. Stat., protects against enforcement of a penalty of this kind. · This section provides: "In all suits brought to recover the forfeiture annexed to any articles of agreement, covenant, bond, or other specialty, where the forfeiture, breach, or non-performance appears by the default or confession of the defendant, or upon demurrer, the court shall render judgment for the plaintiff to , recover so much as is due according to equity. And when the sum for which judgment should be rendered is uncertain, it shall, if either of the parties request it, be assessed by a jury."

But if we are correct in holding that it was the intention of Congress to provide a specific penalty for failing to return the merchandise as required, it is not within the province of courts of equity to mitigate the harshness of penalties or forfeitures in such cases, for such relief would run directly counter to the statutory requirements. Story, Eq. Jur. § 1326. We think the Circuit Court was right in rendering judgment for double the value of the unreturned package.

> *The judgment of the Circuit Court of Appeals will be reversed and the judgment of the Circuit Court affirmed and the case remanded to the Circuit Court.*

MR. JUSTICE BREWER took no part in the decision of this case.